IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| DONIVEN H. MERRITT, *Plaintiff,* v. MARQUETTE TRANSPORTATION COMPANY GULF-INLAND LLC, *Defendant.* | Case No. 5:19-cv-00158 (TBR) |

**MEMORANDUM OPINION**

This matter comes before the Court upon Marquette Transportation Company, LLC's Motion for Partial Summary Judgment, (Mot. for Summ. J.), Dkt. 16-1. Plaintiff Doniven Merritt has responded, (Pl.'s Resp.), Dkt. 30. Marquette has replied, (Def.'s Reply), Dkt. 34. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Marquette's Motion for Partial Summary Judgment, Dkt. 16-1, is **GRANTED**.

## I.   FACTUAL BACKGROUND

This suit arises out of injuries occurring on or about July 7, 2017. Compl., Dkt. 1, at 2. Around July 7, 2017, Doniven Merritt was working as a deckhand on the Father Pat vessel. *Id.* Merritt was tasked with dropping off empty barges. *Id.* According to the Complaint, one or more of the lines were underneath a barge. *Id.* Merritt allegedly tried to pull a line from underneath the barge, and that's when, suddenly, the line became loose. *Id.* Merritt asserts that the loosening of the line caused him to fall and twist his right knee, resulting in medical injuries. *See id.* at 2–3. Specifically, Merritt suffered patellar subluxation and injured his medial patellofemoral ligament; in other words, Merritt's kneecap was forced out of its normal position, which damaged a nearby ligament. *See* Lintner Dep., Dkt. 34-3, at 8–9.

1

Merritt brings claims against Marquette for (1) negligence, (2) unseaworthiness; and (3) maintenance and cure. *See* Compl. at 3–6. Marquette seeks partial summary judgment for the maintenance and cure claim. *See* Def.'s Mot.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . " Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**III.     DISCUSSION**

A shipowner's duty to provide maintenance and cure "arises regardless of fault and whether or not employment on the ship actually caused the seaman's injury." *Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 761 (6th Cir. 2009). Maintenance refers to the shipowner's duty to provide food and lodging while cure is the shipowner's duty to provide medical care and attention "during the period of injury or illness." *Id.* In order to recover for maintenance and cure, a plaintiff must demonstrate that "(1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *West v. Midland Enterprises, Inc.*, 227 F.3d 613, 616 (6th Cir. 2000). Any ambiguities or doubts should be resolved in favor of the plaintiff. *Id.* (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)).

An employee forfeits his or her right to maintenance and cure by failing to disclose certain medical facts, or, when asked about those facts in an employment application, misrepresents them. This defense, established in *McCorpen v. Central Gulf Steamship*, is commonly referred to as the *McCorpen* defense. 396 F.2d 547 (5th Cir. 1968). An employer asserting this defense must establish that (1) the seaman intentionally misrepresented or concealed medical facts, (2) such facts were material, and (3) a causal connection exists between the concealed medical facts and the seaman's injury. *See id.* at 549; *accord Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).

Marquette argues that Merritt is not entitled to maintenance and cure because he concealed material medical facts that are causally connected to the injury sustained on the Father Pat. Merritt asserts that there is a genuine issue of material fact as to all three elements of his employer's defense.

### a. *Intentionally Misrepresented or Concealed Medical Facts*

According to Fifth Circuit precedent, the intentional concealment prong of *McCorpen* is essentially an objective inquiry. *Brown*, 410 F.3d at 174. In *Brown*, the Fifth Circuit noted that where an interview or questionnaire requests disclosure of material medical facts and the seaman fails to provide such facts, the intentional concealment prong is satisfied. *Id.* (internal citations omitted). "*McCorpen's* intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination." *Id.* at 175.

In 2010 Merritt sustained an injury to his right knee while participating in a high school football practice. During a drill that required two players to stand on opposite sides of the ball and tackle each other at full speed, Merritt's partner, who was wearing a helmet, collided head-first with Merritt's right knee. Pl.'s Dep., Dkt. 16-4, at 36. The next day, Merritt felt "soreness" and "tightness" in his right knee and consulted his football team's doctor. *Id.* at 37. The team doctor recommended that Merritt attend physical therapy sessions three times a week for a month. Ex. A, Dkt. 16-2, at 2. Merritt's rehabilitation also involved wearing a knee brace, which Merritt used for around two to three months. Pl.'s Dep. at 39; *see also* Ex. B, Dkt. 16-3, at 4. That much the parties agree upon. They part ways on how to describe the extent of the injury. Marquette asserts that the team doctor diagnosed the injury as a patella fracture. Ex. A at 2. To corroborate its claim, Marquette provides the Court with records showing the diagnosis as "Rt Patella Fx."[1] *Id.*; *see also* Ex. B at 2. Perplexingly, however, that same group of documents contains a handwritten note calling Merritt's right knee injury a "patellar dislocation." Ex. A at 5. Merritt, for his part, does not expressly say that the injury was not a fracture, but he instead

---

[1] The court takes judicial notice that Fx is an abbreviation for fracture. *Fx*, STEDMAN'S MED. DICT., Westlaw (database updated Nov. 2014).

remembers that the team doctor described his injury as "just a bruise, nothing major." Pl.'s Dep. at 38.

The parties also disagree about what happened next, when Merritt returned to the gridiron to finish his high school football career. Marquette claims that problems with Merritt's right knee appear to have been an ongoing issue. Here, Marquette relies on a 2018 medical consultation where Merritt was seeking medical advice pertaining to his 2017 injury. Pl.'s Dep. at 138. In that consultation, Dr. David Lintner wrote that Merritt "has by his estimation [five] episodes involving his knee while playing football in school." Ex. D, Dkt. 16-5, at 2. Merritt, however, maintains that he did not have any other injuries while playing football in high school, Pl.'s Dep. at 39, speculating that the doctor must have "misinterpret[ed]" what he said, *id.* at 136.

Four years later Merritt injured his right leg. In 2014, while working for a construction company, Merritt was crawling through a confined area and "hit [his right] leg on something." Pl.'s Dep. at 32. A medic employed by the company evaluated Merritt's injury. *Id.* at 32–33. Although his leg "hurt," Merritt claims it was "nothing serious" and that he only consulted a medic because "everything has to be tested out and checked out." *Id.* at 32. Ultimately, the medic did not prescribe any medication, but the company did require Merritt to take two weeks off from work to recover from the injury. *Id.* at 33.

In 2017, three years after his leg injury, and seven years after his knee injury, Merritt applied for a job as a deckhand with Marquette. Ex. E-1, Dkt. 16-6, at 1. As part of his application, Marquette required Merritt to complete a medical examination and answer a health status questionnaire. The questionnaire asked Merritt a number of questions, three of which are at issue. *Id.* at 1–4. One question asked whether Merritt had ever been injured while working. *Id.* at 1. Merritt answered no. *Id.* The second question asked whether Merritt had ever lost time

5

from work for injuries sustained. *Id.* Again, Merritt answered no. *Id.* The third question listed fourteen body parts and asked Merritt to check a box beside any body part where he has ever had an injury or pain. *Id.* at 2. Merritt left both the box beside "knees" and the box beside "legs" unchecked. *Id.* Merritt then signed and submitted the form to Marquette. *Id.* at 4.

The Court finds that Merritt has failed to show a disputed fact with regard to the "intentional concealment" prong of the *McCorpen* test. Regardless of whether there were multiple injuries during Merritt's high school football career, and even if Merritt's knee injury is described as a "bruise" rather than a patella fracture, it is undisputed that Merritt suffered a knee injury in 2010. *See* Pl.'s Dep. at 37–39. The team doctor still recommended a month of physical therapy and multiple months of wearing a knee brace. *Id.* at 38. Such a treatment program obviously indicates that Merritt did in fact suffer a knee injury in 2010. *See id.* Merritt also admits that he sustained a leg injury in 2014 while working for a construction company and that he was required to take two weeks off to recover. *See id.* at 32–33. During the application process Marquette directly asked Merritt whether he had ever been injured while working, lost time from work for injuries, or ever had an injury to his knees or legs. *See* Ex. E-1. Merritt answered that he had not, but he now admits that those responses on the questionnaire "w[ere] not accurate statement[s]." Pl.'s Dep. at 62–64. Indeed, each of those questions should have been answered with a yes. Thus, the Court finds that Merritt intentionally misrepresented or concealed his medical history before he was hired.

Attempting to make an end around the objectivity standard of the *McCorpen* test, Merritt urges the Court to adopt a test set forth by the Second Circuit regarding a plaintiff's intent. The Second Circuit adopts a more subjective inquiry when determining whether a plaintiff's concealment was intentional. *See Sammon v. Central Gulf S.S. Corp.*, 442 F.2d 1028, 1029 (2d

6

Cir. 1971). Under the Second Circuit's test, "[t]he concealment of a previous condition is fraudulent only if the seaman knows or reasonably should know that the concealed condition is relevant." *Id.* "The Court is precluded, however, from considering the Second Circuit's approach because the Sixth Circuit has already adopted the *McCorpen* test and its progeny." *Gifford v. American River Transp. Co.*, 833 F. Supp. 2d 684, 692 (W.D. Ky 2011) (*citing West v. Midland Enterprises, Inc.*, 227 F.3d 613, 617 (6th Cir. 2000)). And, on top of that, the Court has already expressed that it believes *Brown's* reasoning is more persuasive because "[e]mployers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees." 410 F.3d at 175.

For all of these reasons, the Court finds that Marquette has met the first prong of the *McCorpen* defense.

    **b.** *Materiality*

"The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. However, "[i]f the vessel owner would have employed the seaman even had the requested disclosure been made, concealment will not bar the seaman's recovery of maintenance and cure." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006).

The parties make essentially the same arguments and rely on the same evidence in their motions. The record shows that if Merritt disclosed his 2010 and 2014 injuries on the medical history questionnaire, Marquette would have conducted further medical investigation before deciding whether to hire Merritt. That investigation, Marquette argues, shows materiality because there is uncertainty about whether Merritt would have been hired. By contrast, Merritt

argues that the information about his prior injuries is not material because Marquette has not shown that, even with complete disclosure, it would have turned Merritt down for the job. The Court agrees with Marquette.

Dr. Kyle Turnbo, Marquette's Medical Director, with the help of his staff, reviews all applicant questionnaires and medical testing information to determine if an applicant can safely perform the essential tasks of the job for which he is applying. *See* Def.'s Reply at 2; *see also* Turnbo Dep., Dkt. 34-2, at 14; Shelby Dep., Dkt. 34-1, at 40. Dr. Turnbo stated that if he saw Merritt's prior injuries, especially his knee injury, on a deckhand's application, he "would be very concern[ed]" and that the injuries "very well could be disqualifying." Turnbo Dep. at 21. When asked if knowledge of these injuries would prompt further medical investigation, Dr. Turnbo responded unequivocally. "Absolutely" was his answer. *Id.*

Merritt's argument runs like this. Dr. Turnbo did not have the authority to make hiring decisions for Marquette, rather he merely gave recommendations about applicants' medical history.[2] Statements from employees or contractors not directly involved in hiring decisions are incompetent summary judgment evidence, because they do not definitively show that a prior injury would have disqualified the applicant. Therefore, Dr. Turnbo's testimony cannot establish materiality. Pl.'s Resp. at 12–14. Merritt relies on *Dauzat v. Weeks Marine, Inc.* to support this argument. The problem for Merritt here is that *McCorpen* specifically rejected this reasoning. 396 F.2d at 550–51 (finding materiality when testimony from the reviewing doctor "tends to

---

[2] Ronnie Dupuy, Marquette's Claims and Risk Manager, Dupuy Decl., Dkt. ¶ 2, corroborates Dr. Turnbo's statements. Dupuy states that "[h]ad Mr. Merritt revealed that he had a prior fracture of his right patella, he would not have been hired to work as a deckhand for Marquette without further inquiry into his medical condition and potential further evaluation." *Id.* ¶ 10. Merritt asks the Court to strike this declaration from the record because Dupuy "handles other matters separate from Marquette's human resources department." Pl.'s Resp. at 12. The Court refuses to strike this declaration. The Dupuy Declaration is valid evidence to consider in a decision to grant summary judgment. An employee or contractor need not have hiring authority to speak to human resources matters. That said, the Dupuy Declaration is not needed in order to find materiality here. For the reasons stated in Part III.B, Dr. Turnbo's statements are enough for the Court to find that the facts concealed by Merritt were material.

negative the idea that [plaintiff] would undoubtedly have been cleared even if he had given truthful answers"). Further, this Court has previously rejected Merritt's reasoning. *See Wiley v. Marquette Transporation Co., LLC*, No. 5:19-CV-00149-TBR, 2021 WL 2926075, at *5 (W.D. Ky. July 12, 2021) ("Although [defendant] has not stated with certainty that it would not have hired [plaintiff], [the reviewing doctor's] statement that further investigation would have been required is enough to render this information material."); *see also Gifford*, 833 F. Supp. 2d at 693 (finding materiality when a doctor who was responsible for reviewing pre-employment medical history forms stated that "[h]ad [plaintiff] disclosed she had lupus, I would have required an investigation into the current status of her medical condition").

In sum, the inquiry into knee and leg health was rationally related to Merritt's ability to perform as a deckhand and Marquette would have investigated the matter further had the requested disclosure been made. Therefore, no genuine dispute of material fact exists as to whether the facts concealed by Merritt were material. Marquette has met the second prong of the *McCorpen* defense.

### c. *Causal Connection*

The Court turns to the third prong of the *McCorpen* defense. Here, the defendant must prove that "there is a causal link between the pre-existing disability that was concealed, and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. "[A]n intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained." *Jenkins v. Aries Marine Corp.*, 590 F. Supp. 2d 807, 813 (E.D. La. 2008). "There is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the

pre-existing disability that was concealed and the disability incurred during the voyage." *Brown*, 410 F.3d at 176 (*quoting Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)). "To find the requisite 'connection,' courts have looked to whether the injuries were identical or produced identical or substantially similar symptoms in the same part of the body." *Jenkins*, 590 F. Supp. at 813 (*citing Olympic Marine Co. v. Credeur*, 1992 WL 345322, at *3 (E.D. La. 1992)). "A causal connection exists where a plaintiff claims an injury in the exact same location." *Gifford*, 833 F. Supp. at 693 (*citing Brown*, 410 F.3d at 176).

Marquette argues that the causal connection prong of the *McCorpen* test is met because Merritt's 2010 injury was in the same location as his 2017 injury.[3] Merritt responds with two arguments, that the 2010 injury (1) was not "serious" enough to cause the present injury, and (2) was too remote. *See* Pl.'s Resp. at 15–16. The Court agrees with Marquette.

Marquette's argument here is that Merritt "under[went] treatment . . . not just to the same knee, but for the identical problem—a right patella fracture—following his asserted injury on the [Father Pat]." Mot. for Summ. J. at 14–15. Regardless of whether Merritt's 2010 injury was a fracture, dislocation, or a bruise, Marquette is correct that under these facts there is a causal connection between the 2010 and 2017 injuries. "Where plaintiff claims an injury in the exact same area . . . as was previously injured, the causal connection is clear." *Weatherford v. Nabors Offshore Corp.*, No. CIV.A. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004). Here, the undisputed facts show that both injuries occurred to the right knee and that is enough to prove causation. In *L.S.K. Towing, Inc.*, for example, the court found that "the causal link seems clear" because plaintiff's prior injury and present injury were both to the left knee. No. CIV. A. 94-

---

[3] Marquette only argues that a causal connection exists between Merritt's 2010 injury and 2017 injury. *See* Mot. for Summ. J. at 14–15; *see also* Def.'s Reply at 10–11. Marquette does not argue that a causal connection exists between Merritt's 2014 injury and 2017 injury. *See* Mot. for Summ. J. at 14–15; *see also* Def.'s Reply at 10–11.

10

4134, 1995 WL 350039, at *2 (E.D. La. June 6, 1995); *see also Brown*, 410 F.3d at 176 ("Because [plaintiff's] injuries were to the same location . . . , the causal link between the concealed information and the new injury was established."); *Meche v. Doucet*, 777 F.3d 237, 249 (5th Cir. 2015) (holding that the "connection" element was satisfied where the plaintiff "aggravated his pre-existing lumbar illness"); *Weatherford*, 2004 WL 414948, at *3 (finding a present injury to the "lower back" was enough to establish a causal connection with a prior injury to the "lower back"); *McNabb v. Bertucci Contracting Co.*, No. CIV.A. 12-1342, 2013 WL 1099156, at *10 (E.D. La. Mar. 15, 2013) ("Because [p]laintiff's alleged 2012 injury is to the same area of [p]laintiff's body as his 2006 injury, [defendant] has established the requisite causal connection."); *Williams v. Magnolia Marine Transp. Co.*, No. CV 20-196, 2020 WL 7773734, at *4 (E.D. La. Dec. 30, 2020) ("Because both injuries affected the [left shoulder], . . . the Court finds that defendant carried its burden of showing causation.").

The court in *Brown* also cited two decisions where a causal link was not established. *Brown*, 410 F.3d at 177 n.9. In the first case, the employer failed to show "that the claimant in fact suffered from a preexisting condition or disability. [The employer] merely showed that the claimant complained of back pain on a prior occasion." *Id.* (quotation marks omitted). In the second case, the employer failed to show "that the claimant's preexisting disability was identical or similar, and there was no evidence of a previous similar diagnosis." *Id.* (quotation marks omitted). Unlike those cases, however, the record here shows that Merritt did more than just complain of prior knee pain—he sought out medical attention, went to physical therapy three times a week for a month, and wore a knee brace for two to three months. *See* Ex. A at 2; *see also* Ex. B at 4. And importantly, there is specific enough evidence in the record of a similar

11

diagnosis. Ex A at 2; *see also* Ex. B at 2. Given that evidence, the Court concludes that there is a connection between Merritt's 2010 injury and his 2017 injury.

Merritt responds, first arguing that his 2010 injury was not serious enough for there to be a causal link to his 2017 injury. Pl.'s Resp. at 15. Here Merritt cites testimony from his treating physician that a person with a previous episode of patellar instability is only at a "slightly higher risk for a recurrence" of that injury. *See id.* at 15–16 (*citing* Litner Dep. at 52). Marquette disputes that point, relying on Dr. Turnbo, who stated that "if you have one patella dislocation, you're at least three or four times more likely to get another one. If you have more than two, it bumps you up to like ten times more likely." Turnbo Dep. at 22. However, *McCorpen's* third prong "does not turn on whether the plaintiff's misrepresentations caused his injuries in the normal sense." *Johnson v. Cenac Towing, Inc.*, 599 F.Supp.2d 721, 728 (E.D. La. 2009). Rather, this inquiry "is simply whether the new injury is related to the old injury, irrespective of their root causes." *Id.* at 728–29. Thus, Merritt's attempt to dismiss the 2010 injury as "nothing serious" misses the mark, because Marquette can still demonstrate a causal link if it proves that the old injury and the new injury affected the same body part, *see supra*. *See Weatherford*, 2004 WL 414948, at *3.

Merritt next argues that "there is no substantial connection between" the 2010 injury and the 2017 injury because he had gone for years without symptoms. Pl.'s Resp. at 16. In support of this argument, Merritt cites *Craddock v. Bisso Marine Co. Inc.*, where the court found that there was a material question as to whether there was a causal link, in part because the plaintiff was without symptoms for years. No. CIV.A. 00-0605, 2000 WL 669648, at *2 (E.D. La. May 22, 2000). The plaintiff in *Craddock* suffered two prior injuries four years and ten years before his present injury, respectively. Merritt also suffered two prior injuries, but these were three

12

years and seven years before his present injury, respectively. The remoteness here is not too attenuated because each of Merritt's injuries were closer in time to his present injury than the plaintiff in *Crawford*. *See id.* at *1–2. Importantly, *Crawford* also based its decision on the fact that the plaintiff had been cleared for heavy duty work after x-rays and MRIs showed no abnormalities. *Id.* But no such evidence exists in this case.[4] The question of remoteness, therefore, does not resolve whether there is a causal link between Merritt's 2010 injury and his 2017 injury. Nevertheless, the Court acknowledges that a ten-year gap between injuries is not insignificant and at least somewhat militates against a causal link. Still, though, the time period in question does not overcome the fact that a causal connection exists where a plaintiff claims an injury in the exact same location. *See Gifford*, 833 F. Supp. at 693 (*citing Brown*, 410 F.3d at 176).

      Thus, the Court finds that Marquette has successfully argued the third prong of the *McCorpen* defense.

---

[4] Plaintiff testified at his deposition that he does not remember receiving an x-ray or MRI on his knee after the 2010 football injury. Pl.'s Dep. at 37–38. Handwritten notes on the 2010 physical therapy records do, however, mention an MRI, increasing the possibility that Merritt received an MRI then. Ex. A at 5. Regardless, the results of that MRI—if it happened at all—are not available to the Court.

## IV.     CONCLUSION

In conclusion, Marquette has established the *McCorpen* defense by demonstrating Merritt's intent to conceal his medical condition, that the nondisclosed facts were material to its decision to hire Merritt, and that a connection existed between the withheld information and the injury complained of in the lawsuit. Accordingly, Marquette's motion for partial summary judgment is GRANTED and Merritt is not entitled to maintenance and cure for his back injuries.

*[Signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 23, 2021