# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH

| | |
|---|---|
| DONIVEN H. MERRITT, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | Case No. 5:19-cv-00158 (TBR) |
| MARQUETTE TRANSPORTATION ) | |
| COMPANY GULF-INLAND LLC, ) | |
| ) | |
| *Defendant.* ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon two motions for partial summary judgment.

First, Defendant Marquette Transportation Company, LLC filed a Motion for Partial Summary Judgment Seeking a Ruling That Plaintiff was Negligent, (Neg. Mot.), Dkt. 41-1. Plaintiff Doniven Merritt has responded, (Neg. Resp.), Dkt. 47-1. Marquette has replied, (Neg. Reply), Dkt. 48.

Second, Marquette filed a Motion for Partial Summary Judgment Seeking Set-Off or Credit, (Set-Off Mot.), Dkt. 46-1. Merritt has responded, (Set-Off Resp.), Dkt. 49-1. Marquette has replied, (Set-Off Reply), Dkt. 49.

As such, briefing is complete and these motions are ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Marquette's Neg. Motion, Dkt. 41-1, is **DENIED** and Marquette's Set-Off Mot., Dkt. 46-1, is **GRANTED IN PART AND DENIED IN PART**.

   **I.**   **FACTUAL BACKGROUND**

The facts of this case are set out in greater detail in the Court's prior opinion and are therefore only briefly summarized here. *See* Summ. J. Op., Dkt. 35, at 1, 4–6. Around July 7, 2017, Doniven Merritt was working as a deckhand on the M/V FATHER PAT when he fell and

1

injured his right knee. *See* Compl., Dkt. 1, at 1–3. Merritt subsequently brought claims against Marquette for: (1) negligence; (2) unseaworthiness; and (3) maintenance and cure. *See id.* at 3–6. On September 24, 2021, the Court granted Marquette's motion for partial summary judgment regarding the maintenance and cure claim. *See* Summ. J. Op. Marquette now seeks summary judgment for issues that pertain to Merritt's remaining claims. *See* Neg. Mot.; *see also* Set-Off Mot.

## II.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . " Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute

between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III.   NEGLIGENCE CLAIM

Marquette asks the Court to find that Merritt was comparatively negligent on the basis of an "unreasonable exposure" theory.[1] *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 732 (E.D. La. 2009); *see also* Neg. Mot. at 4.  There are three elements to this inquiry.  Contributory negligence may be found under such a theory when a seaman: (1) "has concealed material information about a pre-existing injury or physical condition from his employer;" (2) "exposes his body to a risk of reinjury or aggravation of the condition;" and (3) "then suffers reinjury or aggravation injury." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304 (5th Cir. 2008).

The Court begins with the first element, *i.e.*, whether Merritt concealed material information about a pre-existing injury or physical condition from Marquette.  *See id.*  Here, Marquette must show that Merritt "kn[ew], or should have [had] reason to know, that certain working conditions pose[d] an unreasonable risk of reinjury."[2] *Johnson*, 599 F. Supp. 2d at 732. Merritt primarily relies on two facts to demonstrate that he neither knew, nor had reason to know, about an unreasonable risk of reinjury.  First, Merritt states that Marquette's pre-

---

[1] Perhaps out of an abundance of caution, Merritt also interprets Marquette's Neg. Mot. as possibly requesting dismissal of Merritt's negligence claim on the basis of Merritt's alleged negligence. *See* Neg. Resp. at 6–7. Here, Merritt asks the Court to deny Marquette's motion because the jury should be allowed to apportion fault for Merritt's injuries. *See id.* at 7 (citing *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898 (6th Cir. 2006)). However, Marquette readily admits that it is not seeking dismissal of Merritt's negligence claim. *See* Reply at 2–3. Rather, Marquette states that it is seeking a finding that Merritt was negligent as a matter of law based on the facts in the record. *See id.*  The Court therefore need not address the issue of whether Merritt's alleged negligence in any way precludes recovery for his Jones Act claims.

[2] The Fifth Circuit has held that "but for" causation by itself is not sufficient to support a finding of contributory negligence.  *See Johnson*, 544 F.3d at 302.  That's why district courts have interpreted this first element to require that a plaintiff have either actual or constructive knowledge that the working conditions posed an unreasonable risk of reinjury.  *See Johnson*, 599 F. Supp. 2d at 732.

employment physician "performed a complete physical examination and found no reason for concern or need to issue any work restrictions." Neg. Resp. at 13. Merritt maintains that because the physician cleared him for work, he did not think that Marquette's working conditions posed an unreasonable risk of reinjury. *See id.* Second, Merritt testified at his deposition that he did not mention the injury to Marquette because: "I didn't know there was anything wrong with me, to be honest. I didn't think I had a problem. I never felt any different. I always kept going. I never stopped." Merritt Dep., Dkt. 47-2, Ex. A, at 139. In this statement, Merritt suggests that, at the time of the pre-employment examination, he thought his knee had fully recovered from any prior injuries. *See* Neg. Resp. at 13.

Nevertheless, Marquette argues that Merritt "knowingly concealed his prior right knee injury from Marquette . . . , and [] by his concealment, he exposed his knee to risk of re-injury." Neg. Mot. at 5; *see also* Neg. Reply at 4. Marquette uses Dr. Turnbo's deposition testimony in support of its position. *See* Neg. Mot. at 5–6. Marquette directs the court to Dr. Turnbo's statement that "if you have one patella dislocation, you're at least three or for times more likely to get another one. If you have more than two, it bumps you up to like ten times more likely." Turnbo Dep., Dkt. 34-2, Ex. B, at 22.

The problem for Marquette, however, is that the legal standard does not ask what Dr. Turnbo knew or should have known. *See Johnson*, 599 F. Supp. 2d at 732. The applicable legal standard instead asks whether Merritt knew, or should have had reason to know, that certain working conditions at Marquette posed an unreasonable risk of injury. *See id.* And there is a genuine dispute of material fact about this issue. Merritt first injured his right knee in 2010 during a high school football practice. *See* Merritt Dep., Dkt. 16-4, at 36. And Merritt reports that seven years later, when he applied for a job as a deckhand with Marquette, he felt that there

4

was nothing wrong with his knee. *See* Merritt Dep. at 139. In fact, Merritt's testimony suggests that he had full use of his right knee and could engage in physically demanding activities. *See id.* So, according to Merritt, it made sense that Marquette's pre-employment physician found no physical limitations or restrictions with respect to Merritt's job as a deckhand. *See* Neg. Resp. at 13. Based on these allegations, a jury could find that Merritt was not negligent at all. *See, e.g.*, *Johnson*, 599 F. Supp. 2d at 733 (E.D. La. 2009) (finding that a plaintiff was not contributorily negligent because a physician found no reason for concern and the plaintiff had performed physically demanding tasks without any problems); *Gavagan v. United States*, 955 F.2d 1016, 1018 (5th Cir. 1992) (affirming a district court's finding that a plaintiff was contributorily negligent because the plaintiff "knew at the time . . . that the screw, pins and wires remained in his hand, that he did not have full use of his hand and that he should not strain his hand or place undue stress upon it"); *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 372 (5th Cir. 1982) (affirming a jury's finding that a plaintiff was contributorily negligent when he sustained an injury cleaning duck blinds after he was told to "do light work only").

    The Court notes that the parties also dispute other parts of the contributory negligence analysis—namely, whether Merritt was performing a routine task at the time of his injury[3] and whether Merritt sought proper relief from the captain of the M/V FATHER PAT. *See* Neg. Resp. at 14–16; *see also* Reply at 4–5. However, because Marquette has not carried its burden with respect to the first element of the contributory negligence analysis, it is unnecessary for the Court to address how these other disputes relate to the remaining elements.

---

[3] Here, the parties go back and forth about the extent to which *Kuithe v. Gulf Caribe Mar., Inc.*, No. CIV.A. 08-0458-WS-C, 2010 WL 3419998, at *6 (S.D. Ala. Aug. 26, 2010) applies to today's decision.

5

## IV. SET-OFF CLAIMS

A shipowner's duty to provide maintenance and cure "arises regardless of fault and whether or not employment on the ship actually caused the seaman's injury." *Cunningham v. Interlake S.S. Co.*, 567 F.3d 758, 761 (6th Cir. 2009). Maintenance refers to the shipowner's duty to provide food and lodging while cure is the shipowner's duty to provide medical care and attention "during the period of injury or illness." *Id.* In order to recover for maintenance and cure, a plaintiff must demonstrate that "(1) he was working as a seaman, (2) he became ill or injured while in the vessel's service, and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury." *West v. Midland Enterprises, Inc.*, 227 F.3d 613, 616 (6th Cir. 2000). Any ambiguities or doubts should be resolved in favor of the plaintiff. *See id.* (*quoting Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)).

An employee forfeits his or her right to maintenance and cure by failing to disclose certain medical facts, or, when asked about those facts in an employment application, misrepresents them. This defense, established in *McCorpen v. Central Gulf Steamship*, is commonly referred to as the *McCorpen* defense. 396 F.2d 547 (5th Cir. 1968). In a prior decision, this Court determined that Marquette successfully established the *McCorpen* defense and that Merritt is not entitled to maintenance and cure for his knee injury. *See* Summ. J. Op.

Now, Marquette claims that it is entitled to a set-off or credit for the maintenance, cure, and wage advance payments it has made to Merritt, against any Jones Act damages he may recover. *See* Set-Off Mot.

### A. *Maintenance and Cure*

Marquette argues that it "should be allowed a credit for the full amount [of maintenance and cure] it paid to [] Merritt" because this Court found under *McCorpen* that Merritt was not

6

entitled to those benefits. *Id.* at 6. Merritt contends that the *McCorpen* defense is just that—a *defense* for maintenance and cure claims. *See* Set-Off Resp. at 3–7. So according to Merritt, Marquette's successful *McCorpen* defense does not entitle it to any other offsets other than those proven to be duplicative. *See id.* at 3.

In *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723 (5th Cir. 2013) ("*Boudreaux I*"),[4] the Fifth Circuit addressed a similar question—that is, "whether a Jones Act employer who has paid maintenance and cure to a seaman injured in its employ is, upon successfully establishing a *McCorpen* defense to further liability, automatically entitled to a judgment against the seaman for benefits already paid." *Id.* at 725. *Boudreaux I* determined that a successful *McCorpen* defense did not permit an employer to bring an independent suit seeking affirmative recovery. *See id.* at 728. However, *Boudreaux I* also held that an employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen* through means of an offset or setoff. *See id.* ("And to the extent that the employer has already paid benefits, it is entitled to recoup them when there are damages to offset."); *see also Boudreaux v. Transocean Deepwater, Inc.*, 641 F. App'x 328, 337 (5th Cir. 2016) ("*Boudreaux I*") (Owen, J., dissenting). This scheme, the Fifth Circuit concluded, struck the right balance between "protecting seamen in the wake of debilitating on-the-job injury" and "ensuring that shipowners can protect themselves from liability for sums attributable to concealed preexisting injuries." *Boudreaux I*, 721 F.3d at 728.

---

[4] Both parties state that the Sixth Circuit has not addressed whether a Jones Act employer has a right to set-off or credit for maintenance and cure paid when such amounts are not owed due to application of the *McCorpen* defense. *See* Set-Off Mot. at 4; Set-Off Resp. at 2–3. The Court therefore looks to *Boudreaux I* for four reasons. First, *Boudreaux I* was decided by the same circuit that established the *McCorpen* defense. Second, numerous other courts have adopted *Boudreaux I*. *See, e.g.*, *Whitchurch v. Canton Marine Towing Co.*, 302 F. Supp. 3d 986 (C.D. Ill. 2018); *Conger v. K & D Fisheries, LLC*, No. 3:17-CV-00231-SLG, 2018 WL 7629223 (D. Alaska Sept. 18, 2018); *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358 (1st Cir. 2016). Third, both parties claim that *Boudreaux I* favors their position. *See* Set-Off Mot.; Set-Off Resp. Fourth, the Court finds the reasoning of *Boudreaux I* to be persuasive.

Although *Boudreaux I* explained that prior case law permitted offset against Jones Act damages "to the extent they duplicate maintenance and cure previously paid," *Boudreaux I* went on to "render explicit what ha[d] been implicit for many years." *Id.* at 727–28. And the "explicit" right to offset announced in *Boudreaux I* "is not dependent upon showing that the Jones Act damages duplicate, to some extent, the maintenance and cure payments." *Boudreaux II*, 641 F. App'x at 339 (Owen, J., dissenting); *see also Boudreaux I*, 721 F.3d at 728. Such an interpretation is consistent with subsequent Fifth Circuit precedent. *See id.* at 332 (presuming that a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under *McCorpen* through an offset of claims for negligence, unseaworthiness, and payment of additional maintenance and cure).

Merritt offers a different interpretation of *Boudreaux I*. According to Merritt, "the offsets or credits set forth in *Boudreaux* [*I*] are limited to duplicative damages." Set-Off Resp. at 3. What Merritt misses, however, is the fact that *Boudreaux I* merely recognized that Fifth Circuit case law prohibited double recovery to the extent that Jones Act damages duplicate maintenance and cure payments. *Boudreaux I*, 721 F.3d at 727. But that is different from holding that when an employer establishes under *McCorpen* that maintenance and cure was not owed, the employer is only entitled to offset maintenance and cure payments from Jones Act damages by proving duplication. *See id.* at 727–28. The holding of *Boudreaux I* was not so limited. *See id.* Indeed, the *Boudreaux I* court "explicit[ly]" contemplated that an employer would be able to offset against Jones Act damages maintenance and cure payments that the employer was not required to pay under *McCorpen*. *See id.* at 728; *see also Boudreaux II*, 641 F. App'x at 336 (Owen, J., dissenting).

To provide further support for its position, Marquette directs the Court to three district court opinions and one First Circuit opinion, each of which, relying on *Boudreaux I*, purportedly "express[] the right to an offset to *any* damages the seaman may recover under the Jones Act." Set-Off Mot. at 5. Although these four opinions might not reach quite as far as Marquette suggests,[5] nowhere do these opinions contravene this Court's interpretation of *Boudreaux I*. And other than *Boudreaux I*, Merritt does not provide the Court with any other case that only limits offset of maintenance and cure payments to duplicative damages. *See* Set-Off Resp. All of this reaffirms the Court's interpretation of *Boudreaux I*.

Marquette asks the Court to offset its maintenance and cure benefits from whatever Jones Act damages Merritt recovers. *See* Set-Off Reply at 6. This request is consistent with the holding of *Boudreaux I*, and as such, the Court will grant it.

### B. *Lost Wages*

Marquette, citing *Vickers v. Tumey*, 290 F.2d 426 (5th Cir. 1961), argues that it is entitled to a credit for the full amount of the wage advances that it has paid against any Jones Act damages that Merritt might recover. *See* Set-Off Mot. at 7. Merritt concedes that "Marquette may be entitled to offset the unearned wages it has already provided . . . against any lost wages

---

[5] None of these four cases reach so far as to resolve the matter currently before the Court. Marquette first cites *Whitchurch*, 302 F. Supp. 3d at 989 ("Generally, overpayments of maintenance and cure can only be recovered as an offset to any damages a seaman may recover under the Jones Act."). However, the plaintiff there, unlike Merritt, was alleged to have fabricated the injury itself. *See id.* at 990. Marquette next relies on *Conger*, 2018 WL 7629223, at *1 ("The parties agree that if the Court determines that excess maintenance and cure was paid, a set-off against any Jones Act damages is appropriate."). But *Conger* merely held that an employer's counterclaim for restitution of maintenance was impermissible. *See id.* at *1. The third case Marquette cites is *Block Island Fishing, Inc.*, 844 F.3d at 366–67 ("We affirm the district court's ruling that Block Island may offset any overpayment that occurred against any damages that Rogers may win at trial."). However, that case was not based on an employer's *McCorpen* defense, rather it was based on an employer overpaying maintenance and cure benefits. *See id.* Similarly, Marquette finally directs the Court to *Sharpe v. Bertucci Contracting Co. LLC*, No. CIV.A. 13-6101, 2014 WL 4396086, at *2 (E.D. La. Sept. 5, 2014) ("This would not, however, impede Defendant's right to seek offset of the maintenance and cure payments against any potential damages awarded to Plaintiff, which right was clearly contemplated by the express language of the Boudreaux opinion."). But as in *Block Island Fishing, Inc.*, the employer in *Sharpe* did not raise a *McCorpen* defense. *See id.*

9

awarded in trial." Set-Off Resp. at 7. However, Merritt maintains that Marquette "should not be allowed to offset any and all unspecified Jones Act damages [] Merritt may recover." *Id.*

Although an employer owes a seaman unearned wages under a maintenance and cure claim, the seaman is not entitled to recover those same wages through a Jones Act claim. *See Vickers*, 290 F.2d at 435 ("It is obvious, however, that since the element of wages, as such, is inherent in each of the two types of recoveries, there must not be a duplication in the final award."); *see also Caron v. Otonka, Inc.*, 344 F. Supp. 2d 765, 766 (D. Me. 2004) (collecting cases). Permitting such a result would run afoul of double recovery concerns. *Ibid.* However, a seaman can bring claims for Jones Act damages and attempt to recover loss of wages that were not included in maintenance and cure payments, because recovery of those wages does not create the same double recovery problem.[6] *Ibid.*

Therefore, Marquette's request for offset of advanced wage payments is granted to the extent that it seeks credit against those same lost wage payments that Merritt might recover at trial. To the extent that Marquette seeks an offset of wage payments against other Jones Act damages, Marquette's request is denied.

## V.      CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Marquette's Neg. Motion, Dkt. 41-1, is **DENIED** and Marquette's Set-Off Mot., Dkt. 46-1, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**

Thomas B. Russell, Senior Judge
United States District Court

February 14, 2022

---

[6] Marquette contends in its reply that "deducting any wage advances paid by Marquette to [] Merritt from any Jones Act damages he may receive is in line with the rationale of *Boudreaux [I]*." Set-Off Reply at 7. But that is not the holding of *Boudreaux I*, *see supra*; *see also* 721 F.3d at 728. And other than *Vickers*, Marquette does not direct the Court to any other authority supporting its proposition.